Approaching the lectern, the court notes that you were appointed under the Criminal Justice Act. That is correct, Your Honor. And the court wants you to know we deeply appreciate your willingness to accept the assignment. Well, thank you, Your Honor. I appreciate that. And I think you could, have you raised the lectern as far as it will go? There's a button over there somewhere. No, the lectern itself. I think it's to the right. No, I think it's to your right, I think. There, it makes your voice come through better on the microphone. Thank you, Your Honor. As Your Honor noted, my name is Patrick Payton and I am a CJA Appointed Attorney. I did not try the case in the lower court and was appointed on this appeal. This is a case of a felon in possession of a firearm and he was sentenced to the maximum sentence of 10 years for that crime. Prior to trial, trial counsel filed a motion in limine on the drugs that were going to be testified in this case. What apparently happened was the defendant allegedly threw a bag of drugs to another person and said, you owe me $50. And there also was drugs found near where he was arrested. The problem with the court overruling that motion in limine and then overruling when it was renewed for a new trial in Jesuit and acquittal was that the drugs really were not an element of that crime. Were they physically admitted at trial? They were. Well, the ones in the backyard at 206 Kirkland. Yes, that's my understanding that they were. But the drugs thrown on the table earlier, they probably were long gone or not? That is probably correct because the people that testified, Mr. Neff, yes. The motion in limine would have included, I suppose, Neff testified about that? Yes, yes, and that was highly prejudicial to the defendant. And the judge found that this was interlinked, could be well intertwined with the rest of the testimony and it gave a full story. Well, the probative value is certainly not there. You could take this, if this was a movie, you could take the throwing of the drugs to the other witness out, and put it on the floor of the cutting film and the drugs that were found and take those out. And you'd still have the full story about the gun. But what you wouldn't have is you wouldn't have the prejudice that when you try a case in the district court, the people hear about drugs and someone using drugs or having drugs or becoming a drug dealer. It prejudices them so greatly. It sure seems like it's intrinsic, which doesn't, of course, eliminate the 403 issue. Right. Both drugs seem to be intrinsic evidence of what all happened that night. Well, undoubtedly, if the other witnesses are credible, that's true, that it is in there. But the problem is that you can have the story and it can be a complete story for the charge of a felon in possession without ever putting in about the drugs. And then the credibility is not shot for the defendant on these other people who are using drugs and are testifying and were using a large amount of drugs, a very large amount. So it seems to me that you take that out and you're going to have a cleaner and a fairer trial. It's very difficult to try a case. And in fact, I don't know of anything that can be more harmful to a defendant than have drug testimony that he has drugs when that's not his crime. Unless, of course, it would be a crime of violence that the testimony was interwoven. But the drugs is totally unnecessary in this case. Can I add a little bit? Was the credibility of Meth and Williams attacked at trial because they were intoxicated or high that night? Yes, it was.  Was it somewhat more probative to the credibility, etc.? No, I don't think so. And here's why. They were using drugs. He was a supplier of their drugs. Well, no, there's no showing that he was a supplier because he had left when he leaves there. He's gone. He's gone allegedly with a gun. This is the first time that shows that where the drugs came from. This is not showing where the drugs they may have used earlier in the day in that scenario. And it doesn't show where the intoxication, the beverages came from. So I have a real difficulty when the government who has a war on drugs and brings the charge for something else and then wants to put in drugs into the case. It seems to me that the probative value is far outweighed by the unfair prejudicial in this case. This struck me from the very beginning when I read the transcript. This was the part that I just could not see why it had to be in there. I don't think it's so intertwined that you can't cut it out. All the stuff is still there. All of the evidence that you need to prove, if you could prove it, that was there. You didn't need the drugs to be testified to in this particular case. The credibility became a very, very important part of this. And if you already have the jury thinking of this man as a drug dealer, it's pretty well gone down the tube on the credibility for the other witnesses. They're not going to listen to it. Is whatever prejudicial effect the evidence of the drugs may have had so totally outweighed by the uncontrovertible evidence of the possession of the gun that it wouldn't make any difference? Well, first of all, we don't know that. But I don't think it's that uncontroversial because of the credibility of all the other witnesses. Because the other witnesses who testified, they were all high. They were all drunk. And they all admitted that. And they all admitted they had bad memories on this. So it would give a sufficiency of the evidence argument about that because it would become, well, can we convict this man? And then the police officers, excuse me. Might be the tipping point in favor of a conviction, I suppose. That's my contention, Your Honor. And the police officers in this case, they never actually saw him with the gun. So there's no testimony there that would put him in possession of it. So he'd have a fighting chance if this drug thing in there. I think that took away his fighting chance in this case, to tell you the truth. And I think that counsel for the defendant in the lower saw that immediately and immediately went after that particular situation and did a fine job on that because it's well-preserved in the record. And I believe that he did what he needed to do as to this. The second thing I wanted to talk about is the maximum sentence. The average sentence in the district, Southern District, Iowa, is 59 months. This gentleman got the maximum sentence. I think it's really pushed up there because of his past criminal record. I think that by doing that, the judge did not look at, and I always find it very difficult when the criminal part of the judge's guidelines pushes it up so high that it's really the controlling factor of why he got the maximum sentence. I think the judge kind of even admitted that's the reason why it was his past criminal record. And what we're really punishing him is for his criminal record and not for what the crime is. I have asked the court to preserve the five minutes I have left, and I will... I do have one question on the ineffective assistance argument, although usually we don't do that on correct appeal. But you say in the brief that the defendant wanted Guy, I guess Williams... That's correct. ...to testify, and that's his choice to make. Yes, I think it is. You don't follow that with a citation. I know the law is well-established. It's the defendant's choice whether he should testify, but I don't think it's a represented defendant's. I don't think unilaterally the defendant can say, well, I want . . . that the lawyer has to call who the defense wants called. And if that is . . . it may be a point a defendant could legitimately raise at trial. He's out of control. The lawyer controls it. But doesn't the defendant have to raise it to the court? Not in presence of the jury, obviously, but to say the lawyer won't . . . I think there's an important witness and my lawyer won't call him. If that isn't raised to the trial court, isn't it foreclosed? I think you're probably right that it would be foreclosed, but for the fact that we got to give some latitude to a defendant, he's not going to know that he has to create this record. It should be up to the lawyer to go up to the judge and say, I have a disagreement with my client. He wants this person to testify. I don't think this person should testify. I think that's the way that . . . I think that is an issue, but it's a post-conviction issue for . . . It probably is. . . . reasons because you need the full . . . what happened and its nuances. Well, the reason I brought it up was because the judge in the district court put it in the record. Well, you'll reserve the rest of your time then. Thank you. Thank you. We'll hear from the governor, Mr. Ripley. Good morning. Will Ripley here. Good morning. You may proceed. You may proceed. Thank you. May it please the court. I will jump right in to the motion, the defendant's motion for a new trial. In particular, the part of it which was based on the district court's evidentiary ruling with respect to the crack cocaine. The defense seems to be suggesting that . . . well, quite clearly suggested that the government could have told this story, the story of how this firearm got from Mr. Williams' house to the driveway on Curran Street without talking about the drugs. But, of course, that is not the question before this court. The question isn't can you tell the story without this evidence. Motions, of course, for a new trial on this regard are disfavored. They're granted sparingly. There needs to be a clear and prejudicial abuse of discretion. I agree quite obviously with Judge Loken that this is inextricably intertwined evidence here. Think of the crack cocaine and its purpose in the same way that you think of the vodka bottle. If you'll recall, the evidence at trial was that Mr. Walls barged into Mr. Williams' house where Mr. Neff was also present. He was upset, having had an earlier dispute, went straight back into a back bedroom that Mr. Williams had, retrieved this shotgun, exited from the bedroom, was loading shotgun shells into it. At that point, Mr. Williams and Mr. Neff realized what was going on, tried to talk him out of it, tried to dissuade him. And he, in his frustration and an attempt to get them to leave him alone, tossed them a couple of rocks of crack cocaine and grabbed a bottle of vodka off of the table that was right near where he was, at which point he stormed out and walked southbound. Would you speak directly into the mic so that our recorder will record it? Then he left the house and proceeded to walk through the city of Burlington with the shotgun headed back towards where he originally had that dispute. As he was walking, various citizens called, complained of a man walking down the street with a shotgun, and the Burlington Police Department responded. And one officer saw Mr. Walls walking towards him, walking southbound towards him. He lost him behind a house. Mr. Walls saw the uniformed police officer ducked behind a house. The evidence clearly shows it was behind that house. That he tucked the shotgun, he slid it under a vehicle parked behind that house, walked around a fence to the neighboring house, encountered a separate Burlington police officer. This was Officer Girdner. And when he saw Officer Girdner, he'd stopped in his tracks, turned, hustled back up the driveway, briefly went out of sight into a corner of the house, reappeared from that corner, and then complied with Officer Girdner's commands. At that point, he laid down, he was taken into custody, and the investigation continued. Well, in that corner was found the cracked cocaine. And on his person was found the vodka bottle. So as I said, think of the cracked cocaine in the same way that you do the vodka bottle. It connects the defendant, Mr. Walls, to the house from which he took the shotgun. It connects him to the shotgun in that regard. And for that reason, it's inextricably intertwined. I'll make one other point, which isn't actually in the brief, about the vodka bottle. And this may go to defense's position here this morning, which is that you can have this story without having the drugs be a part of it. The vodka bottle was found on Mr. Walls' person. Vodka is not an inherently illegal substance. There's nothing illegal about Mr. Walls possessing vodka. Mr. Walls being a previously convicted felon, there's something illegal about him carrying a shotgun. A shotgun is not an inherently illegal substance. But it's illegal for Mr. Walls. Cracked cocaine, quite obviously, is essentially an inherently illegal substance. This story involves vodka, which connects him to Williams' house, which he did not discard because it is not illegal for him to have it. The cracked cocaine also connects his discarding of an illegal item to him discarding the firearm. And so it was required, it was intertwined and important and probative in that regard. So basically what you're saying is what you say in your brief. This evidence was offered for the purpose of providing the context in which the charged crime occurred to complete the story and to provide the total picture and context of the complete crime. Absolutely, Your Honor. And that's language straight from this court. That is inextricably intertwined. So it's sort of a completeness argument. It is. And I note that one of you, and I don't recall which, inquired of Mr. Payton whether there was anything showing that Mr. Walls was a supplier. Mr. Payton responded fairly emphatically, no. And I will agree with him, absolutely not. And quite honestly, that was purposeful. Because Mr. Payton suggests there's no greater prejudice than drugs. There's no greater prejudice for any defendant than evidence of possession of drugs. I don't know that I agree with that. But it was purposeful on the government's part to limit this crack cocaine evidence. And if you read through the trial record, you will see there was no suggestion that he demanded payment from Mr. Walls and Mr. Neff. In fact, it was presented more like he just gave it to them to get them to leave him alone so they would stop telling him not to take the shotgun. There was no suggestion via evidence, no suggestion via argument that Mr. Walls was a distributor of controlled substances. Quite simply, that crack cocaine functioned to connect Mr. Walls to Mr. Williams' house, which was the place from which Walls stole the shotgun. That evidence functioned in the exact same way that the vodka bottle functioned. Obviously, the second step, or I guess an analysis, admission of evidence, because it's inextricably intertwined with the case does not remove it from a 403-403 analysis. And I know that part of the defendant's contention here is that even if it were inextricably intertwined, the prejudice is so great that it should not have been admitted for that reason. The government disagrees. And I think the trial record supports that the government, and in fact the district court, took steps to make sure that the prejudice did not substantially outweigh the probative value, which of course is what would be required to merit a reversal here. The proof that it was a stolen shotgun is not necessary to convict. It would be relevant to sentencing, but you didn't have to prove that it was a stolen shotgun. That is correct. There's not an element here. The reason for the stolen shotgun background and the house background is because the gun was under a car and not on his person? Well, correct. And we had the ultimate owner of the shotgun, Your Honor, a man with the last name Guernsey, testified that he knows Mr. Williams and that some months before our incident, they had been out hunting. They had returned to Mr. Williams' house and he had left it there. But this trial to link him, I mean, he was nearby the car where it was found and he was seen walking with, what, a stick? So he had been carrying something that was suspicious? He was not seen walking with a stick. He was seen, various people saw him walking with a long stick-like object. I do want to, that leads me, Your Honor, if I may, to something that Mr. Payton said, which is that no police officer saw Mr. Walls with a gun. That's not an accurate statement. Officer Cameron, the first officer to encounter Mr. Walls, his references in the defense is brief to Officer Cameron having been impeached. That is absolutely not the right word for the nature of Officer Cameron's testimony. He was wearing a body camera and so his interaction with fellow officers was recorded. And it's the audio portion of that camera that's informative. At times, while Mr. Walls is still being sought, while the event is still ongoing, before Officer Girdner encountered him, where Cameron tells other officers, he was holding something, I'm not sure what it was. Well, at trial, the portion of the video was played for the jury, and I inquired of Officer Cameron, what did you mean when you said that? And his response was, I could tell it was a firearm. I didn't know if it was a shotgun. I didn't know if it was a rifle. I didn't know, essentially, kind of the size or gauge of the shotgun, if it were a shotgun, the size of the rifle, those types of things. Officer Cameron was fully examined on direct and, importantly, on cross on that issue. And ultimately, the conclusion that the jury made, and what was clear from Officer Cameron's testimony, was that he saw the defendant, Mr. Walls, with a long-barreled firearm. He didn't know what type until that shotgun was removed from underneath the vehicle, at which point he instantly knew and he told the jury. So you didn't need all the house and the drug stuff? I'm sorry? You didn't need all the house and the drug stuff. You had Cameron plus where the gun was found. Yes, but... No, this was overkill. I don't believe it was, Your Honor. I know that's the way cases are often tried, but I think that affects the 403 inquiry. Again, the crack cocaine connects this shotgun to the source. You have Officer Cameron who saw him with it. But the source you don't need. To tell the whole story, Your Honor, you need to... If the whole story is unfairly prejudicial, then you don't get to tell the whole story. That's true. But here, the whole story is not unfairly prejudicial. Any prejudice was mitigated, as the district court indicated. The district court found that given the strength of the linkage between the crack cocaine and this shotgun, given that they were both present earlier at Mr. Williams' house, given the strength of that linkage, the probative value, in fact, substantially outweighed any potential prejudice. That was the finding of the district court. And on this record, there certainly isn't the opposite, which is so much prejudice that that would substantially outweigh the probative value here. The probative value here was strong. It connected, again, that shotgun found underneath the car many, many blocks from Mr. Williams' house to Mr. Williams' house. And the common thread there is Mr. Walsh, because the evidence clearly shows he took it from Mr. Williams' house, walked many, many blocks before he was ultimately encountered by the Burlington Police Department near where the shotgun was ultimately found. I will transition briefly to, I guess, the other issue addressed by Mr. Payton, which is the sentence here. The defense seemed to suggest that there was, in fact, a procedural error here. But of course, there was no objection at the trial level. And so the review here is for plain error. And it seems as if the defense is claiming the procedural error is the district court failed to consider any sentence between what was listed in the PSR as the average in our district, which is 59 months, and ultimately the sentence Mr. Walsh received of 120. But of course, there's no such requirement in the law to take that argument to a fairly extreme extent. Does that mean that district courts now need to list off why each of the 60-month possibilities? There are 60 possibilities between those two. And I think the defense is suggesting district courts need to say why each of those 60 possible sentences is inappropriate. And of course, there's no requirement in the law, and that would be incredibly burdensome. The district court is simply required to explain the basis for the chosen sentence under the . . . Are there cases saying that failure to explain is not reversible error if it wasn't raised contemporaneously with the district court? I'm sorry, Your Honor? Well, we have cases saying that there is technically plain error review, but we have multiple cases saying if you don't raise a failure to explain with the district court, giving the court an opportunity to explain better what you think is not explained, it's not reversible error. You're asking why that's not in my brief? Have you never read those cases? Your Honor, I guess I thought I addressed the plain error in the failure to raise the issue. You're not the only prosecutor in the circuit that apparently doesn't read this stuff. Keep going in with lengthy plain error arguments when we've said on this particular issue. Well, I apologize. If a district court's not given an opportunity to give a better explanation, don't come to us saying, oh, he didn't explain it, or she didn't explain it. I apologize for leaving that out, Your Honor. Well, let's see. There are some things that do not have to be objected to. I'm never clear in my own mind exactly what those are that you have to . . . not you, not the government, but the defense attorney has to raise to preserve the error. There are certain things . . . But your best argument is, raised or not, it has no merit. Absolutely. I mean, I shouldn't make your argument for you because the district judge made an adequate explanation of why the sentence that it gave. I mean, I assume that that's just the thrust of your argument. Absolutely. The sentence was substantively reasonable. Had the statutory maximum not been in place, this defendant's guideline calculation would have been . . . the low end would have been 168. I mean, his criminal history is significant. Importantly, though, the district court also went through the offense conduct that was driving the sentence here, leaving this loaded shotgun in public, the theft of it, the dispute that was underlying it. And so, I am out of time, but I will leave it there. Thank you all. Mr. Payton again. Thank you, Your Honor. I want to talk, first of all, about Officer Cameron. And I may have used the wrong word in there when I said he was impeached. They listened to the tape, and in the tape he never mentions a gun. In fact, his whole scenario is that he doesn't know what he's carrying at that time. So that may have been a word that I should not have used that way. I think counsel is trying to say that the officer clarified that, that he didn't know what kind of gun it was. But that isn't what he said. He said he didn't know what it was. So it seems to me there's a misstatement there by the officer in the court. Once again, he's probably embellishing his testimony, or his recollection isn't as good as it was at first. The second part that was brought up that I would like to address is the fact that the vodka bottle and drugs. Now, the vodka bottle doesn't harm him. It isn't an unfair prejudice. The drugs is an unfair prejudice. That's why counsel didn't bring up the fact about the drugs, I mean about the vodka bottle, because it didn't unfairly prejudice the jury. The drugs does unfairly prejudice the jury. He still gets the link with the drug. He still gets to bring in the vodka bottle in the testimony. And he doesn't have to exercise that out. But the drugs is a different matter. It should be exercised out in this case, because he's charged with a felon in possession, not with a drug charge. Thank you, Your Honor. Very well, we thank you for the argument, both sides. The case is now submitted, and we will take it under consideration.